IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - NORTHERN DIVISION

| | |
|---|---|
| JANA URAGAMI,<br><br>    Plaintiff,<br><br>vs.<br><br>HOME DEPOT USA, INC.,<br><br>    Defendant. | **MEMORANDUM OPINION<br>AND ORDER**<br><br><br>Case No. 1:03-CV-00070<br><br>Judge Dee Benson |

**INTRODUCTION**

Plaintiff Jana Uragami ("Uragami") has filed the present action against her former employer, Defendant Home Depot USA, Inc. ("Home Depot"), seeking recovery for claims of sexual harassment and retaliation. Before the Court is Home Depot's Motion for Summary Judgment on both claims. The Court felt that oral arguments would not be necessary in ruling on this motion, and therefore issues the following memorandum opinion and order based on the written submissions of the parties and a review of the relevant law.

**BACKGROUND[1]**

**I.    Facts Related to Sexual Harassment Claim**

Uragami was hired by Home Depot in September 1998 to work as an associate in Home Depot's Distribution Center (the "DC") in Clearfield, Utah. As a new employee, Uragami received and read the company handbook (the "Handbook") and signed an acknowledgment to

---

[1] The following factual background is a summary of the undisputed facts provided to the Court by Home Depot. Uragami does not dispute any of these facts in her memorandum and they are therefore deemed admitted. DUCivR 56-1(c).

that effect on September 14, 1998. The Handbook contained Home Depot's anti-sexual harassment policy which provided a "multi-avenue procedure for complaining about sexual harassment and a toll-free telephone number that employees could use to report sexual harassment." *Defendant's Memorandum in Support of Motion for Summary Judgment* (*Defendant's Memo*), at iii. The Handbook specifically provided as follows with respect to Home Depot's company policy:

> - If you believe you are being harassed or exposed to conduct you find offensive, ask the person to stop immediately.
>
> - If the conduct continues, contact a member of management.
>
> - If you are not comfortable discussing the problem with your manager, or if you believe that your concern is not being appropriately resolved, contact your Store Manager, District Manager, Human Resource Manager or Division VP/Director of Human Resources.
>
> - The Alert Line is also available for associates who wish to report harassment, but want to remain anonymous. [Alert Line telephone number].

*Id.*

In addition to its anti-sexual harassment policy, Home Depot also used a continuing anti-sexual harassment program among its employees to help implement its policy. Part of the program involved posting anti-sexual harassment posters in the workplace entitled "You Have a Right to a Harassment-Free Workplace." The posters advised employees that:

> 1) Sexual harassment is unlawful and unacceptable in a workplace. Unwelcome sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature constitute sexual harassment.
>
> 2) Sexual harassment is illegal whether it is initiated by a supervisor, a manager, a coworker, or any non-employee.
>
> 3) Because of the importance we place on these types of issues, this company has

>  instituted a procedure for investigating harassment complaints. It is our policy to investigate and resolve these issues in a prompt manner.
>
>  4) If you have been harassed, or another's conduct creates an intimidating, hostile, or offensive work environment, please notify one of the people listed below immediately.

*Id.* at iv. Uragami assisted in Home Depot's anti-sexual harassment program by displaying one of these posters at the DC and by writing on the poster the name and telephone number of a human resources official for employees to contact to report sexual harassment.

Uragami continued working as an associate until about mid-2001 when she became a supervisor at the DC. As a supervisor, she worked closely with the DC manager, Dan Shepard ("Shepard"), who had been managing the DC from the year 2000. Since the time Shepard transferred to the DC, Uragami considered him a friend and shared with him personal information about herself.[2] By the end of 2001, their relationship was to a point that Uragami felt comfortable in giving Shepard a Christmas gift.

In February, 2002, Shepard and Uragami went on a business lunch together. At that lunch, Shepard gave Uragami some diamond earrings as a gift and hugged her. Although Shepard had made what Uragami deemed inappropriate comments before then, she characterized this luncheon as the first time Shepard sexually harassed her. Over the next several months, Uragami claims that Shepard repeatedly harassed her sexually,[3] the last incident occurring in

---

[2] In her deposition, Uragami testified that she shared information with Shepard about her marriage, her children, and the difficulties she was having with her husband, including attending marriage counseling. She also discussed aspects of her medical history, including her cesarean section and breast augmentation surgeries.

[3] Uragami argues that the following actions of Shepard constituted sexual harassment: he made other advances toward her, made inappropriate remarks, purchased gifts for her, asked her to extend a business trip to spend personal time with him, took her to an English class, kissed

July, 2002. Shepard denies those claims.

Although Uragami felt she was being sexually harassed between the months of February and July in 2002, and was even subjected to inappropriate remarks and behavior before then, Uragami told no one about these incidents; she never complained to family members, to law enforcement officials, to friends and coworkers, nor to her employer. During that time, Uragami felt that she could and should resolve the matter herself. When Uragami finally reported these incidents to Home Depot on August 12, 2002, Dawn Jackman ("Jackman"), Divisional Human Resources Manager for Home Depot, conducted an internal investigation.[4] Jackman concluded, after several interviews with Uragami, Shepard, witnesses and other employees, that Shepard had indeed exhibited poor judgment in executing his management duties and had exhibited favoritism. However, Jackman could not independently confirm Uragami's sexual harassment complaint.

Jackman reported the findings of her investigation to Vince Santiago ("Santigo"), Home Depot's Northwest Division Manager for distribution centers in the northwest region. Armed with Jackman's report, Santiago issued a warning to Shepard citing his poor managerial judgment and conduct that fostered a perception of favoritism. Santiago also warned Shepard

---

her, and touched her inappropriately. Uragami also claims that Shepard was infatuated with her, that he wanted her to move to California with him, and that he monitored her personal relationship with a temporary employee with whom Uragami, although married, was having an affair.

[4] Apparently being unable to find a resolution to the matter on her own, Uragami stated that she finally reported Shepard's conduct to Jackman because she "just wanted to tell someone." Initially, she told Jackman the sexual harassment had stopped and she didn't want Jackman to do anything. After Uragami provided more information, Jackman initiated the investigation.

that he may be terminated if he engaged in any future inappropriate conduct.

Following the investigation and Santiago's warnings, Uragami returned to work at her same position and rate of pay. Although she continued to report to Shepard, Home Depot required that another employee accompany her during her employee reviews. Home Depot also encouraged Uragami to report any further information regarding any mistreatment by Shepard.

On September 4, 2002, being dissatisfied with the investigation and the fact that she was still working with Shepard, Uragami faxed a birthday card Shepard sent her sometime before the investigation began. The card contained language, both in printed and hand-written form, that was beyond what Home Depot considered appropriate. As a result, Santiago terminated Shepard on September 5, 2002, the day after Uragami sent the fax. After that, Shepard had no further contact with Uragami.

With Shepard gone, Uragami continued in her position as supervisor at the DC under Ryvyn Young ("Young"), a female interim manager, with no reduction in pay or change of duties. Young's other responsibilities with Home Depot often took her out of town and left Uragami, as second-in-command, as Home Depot's only senior contact at the DC. Santiago considered Uragami's position at the DC as one of trust and responsibility.

## II.  Facts Relating to Retaliation Claim

After Shepard was fired, he sought unemployment benefits in a legal action against Home Depot. He asked Lonnie Berg ("Berg"), another supervisor at the DC, to appear as a witness in his behalf, which upset Uragami. The administrative judge ruled in Shepard's favor, and the court's decision was faxed to the DC on November 14, 2002. Although she was not involved in the litigation and the decision was not faxed specifically to her, Uragami read the decision in its

5

entirety and was upset that Shepard prevailed.

Uragami contacted Rich Salon ("Salon"), a Home Depot human resources officer, about the documents faxed to the DC. Salon told Uragami that those documents were confidential and under no circumstances was she to discuss the matter with Berg. Despite her understanding of the situation from her conversation with Salon, Uragami kept copies of the confidential documents and confronted Berg regarding his testimony in behalf of Shepard. Because of her conduct, Santiago believed Uragami had violated her position of trust and therefore terminated her for insubordination on November 26, 2002, nearly four months after Uragami had complained about Shepard's conduct.

## ANALYSIS

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In the present case, Uragami has not objected to any of the facts as set forth by Home Depot in its memorandum. In support of her arguments against summary judgment, Uragami does add the following details about what occurred: 1) that the fax she read was addressed to "Home Depot" and was sent to a common fax machine; 2) that she had a perfect record with Home Depot, never having been cited for poor job performance; and 3) that other employees had been cited by Home Depot for what were in her estimation far more serious infractions but were not terminated. As discussed below, these details are not material to the issues of whether she was sexually harassed or terminated out of retaliation either because they are irrelevant or they are not substantiated. Therefore, because there is no genuine issue of material fact, the Court looks at whether Home Depot is entitled to judgment as a matter of law on each of Uragami's claims.

I.      **Sexual Harassment**

Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment because of her sex. *See* 42 U.S.C. § 2000e-2(a)(1).  Where, as here, a plaintiff seeks recovery from a corporate employer due to the discriminatory acts of a supervisor, "agency principles constrain the imposition of vicarious liability." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 763 (1998).

A corporate employer may be vicariously liable for the discriminatory actions of its supervisors toward employees.  In the companion cases of *Burlington* and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court announced the rule that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  This rule was born out of extensive an analysis of agency principles recognizing a "central principal of agency law" that dictates "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington*, 524 U.S. at 755-56.  Although the Supreme Court recognized that generally "sexual harassment by a supervisor is not conduct within the scope of employment," *Id*. at 757, it likewise found that, "beyond question . . . when a supervisor takes a tangible employment action against a subordinate" because of discrimination, he is aided in committing that discriminating action by the existence of the agency relationship with the corporate employer. *Id*. at 760.  Therefore, because "tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates . . . [such an action] taken by the supervisor becomes for Title VII purposes the act of the

employer,"and vicarious liability will always be proper. *Id.* at 762.

Under this analysis, the Supreme Court recognized that there is some difficulty in holding an employer vicariously liable for the actions of a supervisor when the supervisor has taken no tangible employment action against the aggrieved employee. To allow for this difficulty, the Supreme Court announced the following affirmative defense to strict vicarious liability in both *Burlington* and *Faragher*:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Id*. at 765; *Faragher*, 524 U.S. at 807-8.

Thus, in determining whether to hold Home Depot vicariously liable for Shepard's misuse of supervisory authority, the Court must first look at whether Shepard took a tangible employment action against Uragami. If such an action was taken by Shepard, no affirmative defense is available to Home Depot, and it will be strictly liable for Shepard's actions. *See*

8

*Sauers v. Salt Lake County*, 1 F.3d 1122, 1127 (10th Cir. 1993) ("If the plaintiff can show that she suffered an economic injury from her supervisor's actions, the employer becomes strictly liable without any further showing of why the employer should be responsible for the employer's conduct." (quotations and citations omitted)). If Shepard took no tangible employment action against Uragami, then Home Depot may assert the *Faragher/Burlington* affirmative defense to avoid vicarious liability. *See Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 (10th Cir. 2001) ("The *Faragher/Burlington* affirmative defense can only be raised if no tangible employment action was taken by the harassing supervisor against the plaintiff employee." (quotations and citations omitted)).

    **A.**    **Tangible Employment Action**

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington*, 524 U.S. at 761; *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1267 (10th Cir. 2004) (endorsing the *Burlington* definition). Under the facts of this case, it is clear that Uragami suffered no tangible employment action at the hands of Shepard, and she does not argue otherwise. She was not fired by Shepard, nor did Shepard fail to promote her to a position for which she was otherwise qualified. Shepard did not reassign Uragami, let alone reassign her with significantly different responsibilities, and he did not make any decision that caused a significant change in Uragami's benefits. As far as the Court can tell, Uragami's employment status did not change at all once her sexual harassment complaint surfaced, least of all at the hands of Shepard. If anything, she was given more responsibility at the DC. Therefore, because

no tangible employment action was levied against Uragami by Shepard, Home Depot may properly assert the *Faragher/Burlington* affirmative defense by showing 1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and 2) that Uragami unreasonably failed to take advantage of any preventive or corrective opportunities provided by Home Depot or to otherwise avoid harm.

      **B.**    **Reasonable Care**

The specific contours of what constitutes reasonable care for an employer in this environment are not spelled out in *Faragher* or *Burlington*, and perhaps rightfully so; differing conduct in different situations may be equally reasonable. Although not indispensable to reasonableness, the Supreme Court counseled that the existence or lack of a stated antiharassment policy with complaint procedure is an appropriate place to begin an inquiry. While the existence of such a policy is not per se reasonable care, *see Derijk v. Southland Corp.*, 313 F.Supp.2d 1168, 1174-75 (D. Utah 2003) (existence and dissemination of written antiharassment policy not sufficient to rule as a matter of law that employer exercised reasonable care), it can be a powerful indication that the employer is at least taking reasonable preventative measures. For example, in *Conatzer v. Medical Professional Building Services, Inc.*, 255 F.Supp.2d 1259 (N.D. Okla. 2003), it was undisputed that the employer promulgated an antiharassment policy with a complaint procedure, and that the policy was posted in every break room. Although the policy and grievance procedure, in the court's terms, were not "models of specificity," they fulfilled at least two key functions: 1) the policy clearly prohibited sexual discrimination, and 2) the grievance procedure provided an avenue for an employee to complain to higher management. *Id.* at 1268. Based on those facts, the *Conatzer* court found as a matter

of law that the employer's antiharassment policy and grievance procedure were reasonably calculated to prevent sexually harassing behavior. *Id.*

It is similarly undisputed here that Home Depot had in place an anti-sexual harssment policy and that Uragami was aware of that policy. It is also undisputed that Home Depot conducted a continuing anti-sexual harassment program among its employees to implement the policy. Uragami participated in that program by posting antiharassment posters in the workplace advising employees of their right to a work environment free of sexual harassment and the procedures to follow to report conduct contrary to that policy. Based on those facts, the Court finds as a matter of law the Home Depot exercised reasonable care – through its antiharassment policy, grievance procedure, and continuing antiharassment program – in discouraging and preventing sexual harassment in the workplace.

In addition to being reasonable in prevention, an employer, when necessary, must also take reasonable measures to promptly correct harassing conduct that may have already occurred in the workplace. While most courts in analyzing this first prong of the *Faragher/Burlington* defense rely on the same conduct of the employer to constitute both preventative and corrective measures, the facts of this case warrant, in the Court's view, a specific mention of corrective conduct. Although the Court is not aware of Home Depot's efforts to correct harassing behavior in other instances, it's response to Uragami's complaint in the present case indicates that it takes reasonable measures to promptly correct any sexually harassing behavior that may occur.

Beyond awareness of Home Depot's anti-harassment policies and procedures, Uragami was also familiar with their effectiveness. When she reported Shepard's behavior to Home Depot, it launched an immediate investigation into his conduct. While it could not independently

conclude based on this initial investigation that Shepard had indeed sexually harassed Uragami, Home Depot nonetheless took preventive measures. Presumably out of an abundance of caution and granting Uragami every benefit of doubt, Home Depot required that another employee be present at all future employee reviews between Shepard and Uragami and issued a warning to Shepard that his employment was in jeopardy should any evidence of harassment come forward. When Uragami provided such evidence, Shepard was fired the very next day. In all, approximately three weeks passed from the day Uragami first reported Shepard's behavior to when he was terminated. It also appears that during those three weeks, Home Depot took precautions to insure that Uragami never was in the uncomfortable position of working alone with Shepard. Based on this conduct, the Court finds as a matter of law that Home Depot took reasonable care to promptly correct any sexually harassing behavior. Combined with the reasonable care exercised in preventing sexual harassment, Home Depot has satisfied the first prong of the *Faragher/Burlington* affirmative defense.

      **C.**    **Unreasonable Conduct of Uragami**

The second prong of the *Faragher/Burlington* defense requires Home Depot to prove by a preponderance of the evidence that Uragami "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer" or unreasonably failed to avoid harm otherwise. *Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. With respect to this prong, the Supreme Court again instructed that, "while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden . . . ." *Id*.

Despite being familiar with Home Depot's anti-harassment policies and procedures – through new employee training, participation in a program to implement company policy, and constant reminders throughout the store of reporting procedures – Uragami waited more than six months from the time she believes she was first sexually harassed to report Shepard's inappropriate behavior. Without an adequate explanation for her delay, Uragami's inaction constitutes an unreasonable failure to take advantage of the help Home Depot offered. *See Conatzer v. Medical Professional Bldg. Serv's. Corp.*, 95 Fed.Appx. 276, 281 (10th Cir. 2004) (delay of three weeks from the first incident was an unreasonable failure to act). The only explanation for the delay Uragami offers is that she believed she could handle and perhaps resolve her issues with Shepard by herself. This does not suffice to render a six-month delay reasonable. Therefore, Home Depot has satisfied prong two of the defense.

Because no tangible employment action was taken against Uragami by Shepard, and because 1) Home Depot exercised reasonable care in preventing and promptly correcting harassing behavior and 2) Uragami unreasonably failed to take advantage of Home Depot's anti-harassment procedures, Home Depot is relieved of vicarious liability for Shepard's sexually harassing behavior. Home Depot's motion for summary judgment on Uragami's sexual harassment claim is therefore **GRANTED**.

## II.     Retaliation

Uragami next claims that Home Depot terminated her in retaliation for her sexual harassment complaint. This claim must be examined under the burden-shifting framework first outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Tran*, 355 F.3d at 1266 (applying *McDonnell Douglas*

framework to retaliation claim); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (same).  Under this framework, Uragami must first establish a prima facie case of retaliation by showing 1) that she engaged in a protected activity, 2) that Home Depot took an adverse employment action against her, and 3) that there exists a causal connection between the protected activity and the adverse action.  *See Tran*, 355 F.3d at 1266.  If Uragami can establish a prima facie case, the burden then shifts to Home Depot to show a legitimate, non-discriminatory reason for the adverse employment action.  If Home Depot can articulate a proper reason for its action, then the burden shifts back to Uragami to show that the reasoning put forth by Home Depot is merely pretextual.  Absent a showing of pretext, summary judgment in favor of Home Depot on the retaliation claim would be proper.  *Id*.

      A.    **Prima Facie Showing**

The only aspect of a prima facie case of retaliation that is contested by Home Depot is whether there was a causal connection between Uragami's protected activity (first reporting Shepard's sexual harassment on August 12, 2002) and Home Depot's adverse employment action (firing Uragami on November 26, 2002).  *See Anderson*, 181 F.3d at 1178 (termination is an adverse employment action).  The period between Uragami's protected activity and her termination is central to a determination of whether a causal connection exists "because the closer it occurred to the protected activity, the more likely it will support a showing of causation."  *Id*. at 1179; *see also Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996) (protected conduct closely followed by adverse employment action may justify an inference of retaliatory motive).  In determining how soon after participation in a protected activity is soon enough to justify concluding that a retaliatory motive exists, the Tenth Circuit, in a sampling of

cases, has held as follows: one and one-half months (46 days) is sufficiently close to justify finding a causal connection, *Ramirez v. Oklahoma Dept. of Health*, 41 F.3d 584, 596 (10th Cir. 1994); two months and one week (71 days) is assumed, *arrguendo*, to be sufficiently close, *Anderson*, 181 F.3d at 1180; sometime between two months and one week and just under three months is "probably too far apart to establish causation," *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231; and termination three months after protected activity does not closely follow the protected activity sufficiently to, standing alone, establish a causal connection or justify an inference of retaliation, *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997). Whether or not intentionally done so, the Tenth Circuit seems to have drawn the line somewhere around nine weeks. What that limit is precisely is of no concern in this case, however, since the time frame at issue here is far from it.

   The temporal proximity of Home Depot's adverse action to Uragami's protected activity in this case is approximately three months and two weeks, well beyond what, according to precedent, is sufficiently close in time to justify an inference of retaliation. Therefore, standing alone, temporal proximity is not sufficient to establish a causal connection between Uragami's complaint and her subsequent termination. Uragami must rely on other evidence of retaliation to support her argument that a causal connection exists; however, she presents none. She points to no other action of Home Depot other than her termination that could be considered retaliatory or something akin to "a pattern of retaliatory conduct." *See Id.*, citing *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324 (10th Cir.), *cert. denied*, 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996) (in determining whether retaliatory motive exists, temporal proximity between protected activity and adverse action should not be strictly adhered to where "the pattern of retaliatory

conduct begins soon after the [protected activity] and only later culminates in actual discharge."). Without such evidence, her argument must fail.

Because there is no evidence that indicates a retaliatory motive or that merely supports an inference of retaliation, Uragami cannot show a causal connection between her termination and her sexual harassment complaint. Therefore, she has not made the requisite showing of a prima facie claim for retaliation. Based on that determination alone, Uragami's claim for retaliation cannot survive summary judgment, and Home Depot's motion for summary judgment on Uragami's retaliation claim should therefore be granted. However, even if it is later determined that Uragami did make a sufficient prima facie showing of retaliation, the Court believes that Home Depot has carried its burden of showing a legitimate non-retaliatory reason for Uragami's termination, and Uragami has failed to show that Home Depot's offered reasoning was pretextual.

**B.     Legitimate Reason for Termination**

Under its burden, Home Depot offers that the reason Uragami was terminated was insubordination – failing to follow the instructions of a supervisor by confronting Berg about his testimony with confidential information she received. Insubordination would certain qualify as a legitimate non-retaliatory reason for terminating an employee. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000) (insubordination is a non-discriminatory reason for termination).

In order to show pretext, Uragami must demonstrate that Home Depot's proffered reason of insubordination contains "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . that a reasonable factfinder could rationally find [it] unworthy of credence and

hence infer that the [Home Depot] did not act for the asserted non-discriminatory reason[]."

*Anderson*, 181 F.3d at 1189, quoting *Morgan v. Hilti Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Mere conjecture that Home Depot acted out of retaliation will not suffice to establish pretext.

*Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004).  Uragami seems to offer two explanations why Home Depot's reason was pretextual: 1) she believed she had authority to read the fax because she was a supervisor and the information was faxed to a common fax machine at the DC; and 2) she had a performance record at Home Depot with no blemishes whereas other employees who were "written up" for poor performance were not terminated.[5]

As to her first argument, Home Depot does not argue here that its determination that Uragami was insubordinate was solely based on the fact that she took the information from the fax machine and read it.  Regardless of whether she had authority to read the documents, Home Depot asserts that Uragami was insubordinate because she did exactly what Salon instructed her not to do – confront Berg with confidential information.  Based on her direct defiance of her supervisor's instructions, Home Depot felt that Uragami had violated her position of trust and therefore terminated her.  The Court does not believe that this reason is so weak, implausible, inconsistent or incoherent that a reasonable factfinder would not believe it.  Uragami's first argument therefore does not show pretext.

In her second argument, Uragami essentially argues that she was treated differently than

---

[5] It appears also from Uragami's brief that she would have the Court consider the temporal proximity between her complaint and her termination as evidence of pretext.  However, temporal proximity should only be considered in determining whether a causal connection exists in order to establish a prima facie retaliation claim.  *Annett*, 371 F.3d at 1241 (because the burden of establishing pretext is a higher standard than that of establishing a prima facie case, the relatively simple showing of temporal proximity is not properly considered when analyzing pretext).

other employees by being terminated.[6]  *See Thierry v. E.E.O.C.*, 2005 WL 1984434 at *4 (10th Cir. Aug. 18, 2005) ("if the employer attempts to justify an adverse action against the plaintiff by alleging that the plaintiff engaged in misconduct, the plaintiff can demonstrate that this justification is pretextual by establishing that employees who engaged in similar misconduct were treated differently"); *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) ("typically, a plaintiff may show pretext . . . with evidence that . . . he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness" (citation omitted)).  However, she only offers her statements that one employee was "written up for a lot worse things," and that another was "written up for lying on a Workmans Comp claim."  She offers no corroborating evidence that these events actually happened, nor does she provide any information that these employees were similarly situated or that their alleged offenses were comparable in seriousness to hers.  Without such evidence, the Court cannot find that Uragami was treated so differently so as to cause a reasonable factfinder to question Home Depot's motives for terminating her.  Therefore, there is no evidence that Home Depot's stated reason for Uragami's termination was pretextual based on its treatment of other employees.

Because Uragami cannot point to any evidence that would support a finding that Home Depot terminated her for anything other than a legitimate non-discriminatory reason, there is no pretext.  Therefore, even if Uragami could show a prima facie case of retaliation, the Court finds that Home Depot has provided a legitimate reason terminating Uragami, and Uragami cannot

---

[6] In her deposition, Uragami claims that "Dan got written up for a lot worse things that he was doing," and "Lonnie had gotten written up for lying on a Workmans [sic] Comp claim."  The Court assumes that "Dan" refers to Shepard and "Lonnie" refers to Berg primarily because Uragami stated she knew this information through personal conversations with the employees rather than a review of their respective files.

show that this reason was pretextual. The Court would accordingly grant Home Depot's motion for summary judgment on Uragami's retaliation claim even if she had made a prima facie showing of retaliation.

## CONCLUSION

With respect to Uragami's sexual harassment claim, no tangible employment was taken against her by Shepard, leaving Home Depot free to assert the *Faragher/Burlington* affirmative defense. Under that defense, Home Depot exercised reasonable care in preventing sexual harassment from occurring and in promptly correcting harassment where it had already occurred. Additionally, Uragami unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. Therefore, Home Depot is shielded from vicarious liability for the actions of its supervisor in this case based on the *Faragher/Burlington* affirmative defense. Accordingly, the Court **GRANTS** Home Depot's motion for summary judgment on the sexual harassment claim.

The Court likewise **GRANTS** Home Depot's motion for summary on Uragami's retaliation claim. Uragami has not shown a prima facie claim for retaliation because there was no causal connection between her sexual harassment complaint and her termination. Furthermore, even if she could make a prima facie showing, Uragami cannot show that the legitimate non-discriminatory reason for her termination offered by Home Depot was pretextual.

Dated this 2nd day of September, 2005.

_____
Dee Benson
United States District Judge